ISAAC WHEELER *vs.* THOMAS A. HILL.

To exclude the communications of client to counsel from being given in evidence, it is not necessary that they should have been given under any injunction of secresy.

But the mere fact of the employment of counsel in a cause is admissible.

In an action by the lessee against the lessor on the covenants of a lease, a process of forcible entry and detainer, which had been sued out by the lessor but on which no judgment had been rendered, cannot be given in evidence by the defendant to show an entry by him for a forfeiture.

If one party introduce in evidence a judgment against the other in favor of a third person, he who introduces it cannot afterwards object to its introduction or legal effect.

Where the lessee conveys to a third person a part of the premises leased for a portion of his term, such third person is not an assignee of the term, but an undertenant, and improvements made by him are to be considered as made by the tenant.

THE action was covenant broken on a lease, and the defendant, with the general issue, pleaded by brief statement performance generally. It does not appear that there was any replication. The lease was dated *Sept.* 10, 1830, wherein the defendant leased to the plaintiff, and his heirs, executors, administrators and assigns,

a building at the west end of the bridge in the village of *Bangor*, with the lot of land belonging to the same and the wharf thereon, for the term of five years, commencing *Nov.* 1, 1830. One of the covenants on the part of *Wheeler* was, that the building should not be used for purposes usually denominated extra hazardous as to fire by insurance companies. At the close of the lease was this provision. "And the parties aforesaid for themselves respectively, each with the other and their respective heirs, executors and administrators do further covenant and agree as follows, viz. that the said *Wheeler* may at his own expense, repair, alter and improve said building in such manner as shall be most for his interest, but that all fixtures he may make to the premises during said term shall remain and become the property of said *Hill,* at the end of said term, without any charge for the same — that if said *Hill* shall make an actual and *bona fide* sale of the premises during said term, this lease shall expire after two years from this date, but in such case, said *Hill* shall pay said *Wheeler* for all betterments which he shall have made on the premises." The plaintiff introduced evidence tending to prove, that after the execution of the lease he made alterations and improvements in the building; that *May* 2, 1831, he leased a part of the premises, including the cellar, to *Hasty & Huntress, for one or five years,* from *Nov.* 1, 1830, the parties mutually agreeing that *Hasty & Huntress* might at their own expense, repair, alter and improve the premises for their interest and benefit, to become the property of *Wheeler* without any charge for the same, but that *if Wheeler did not hold the premises for the whole five years, the lease should expire after two years,* and in such case *Wheeler* should pay them for all betterments they should make on the premises ; that *Hasty & Huntress* made expensive improvements, which were fixtures, and which greatly increased the rents of the same. The plaintiff read in evidence a deed of the premises from the defendant to *Samuel Smith,* dated *Dec.* 22, 1832, and an obligation from *Smith* to *Hill* of the same date, stipulating that *Smith* should have all after rents and indemnify *Hill* against all claims in consequence of the lease. The defendant then introduced evidence tending to show, that the expenditures thus made on the building were calculated to produce an increase of rent, and that were the building to remain for a

series of years in the state in which it was put by the expenditures, the property would be increased in value equal to the value of the expenditures, but that the alterations made, did not increase the value of the property in the market. In the spring of 1833, the building was removed by *Smith*, against the wishes of the tenants. There was evidence introduced by defendant tending to prove, that certain mechanics, and among them a plane maker, had occupied parts of the premises during a portion of the time, and that those employments were " usually denominated extra hazardous as to fire by insurance companies." There was some testimony, that at some time an entry had been made for breach of covenants for non-payment of rent. The defendant offered to read a process of forcible entry and detainer, dated *Dec.* 13, 1832, instituted by him against one *Burr*, the occupant of the cellar under *Hasty & Huntress*, to which *Burr* had appeared and pleaded the general issue, but no judgment had been rendered therein ; and offered to prove by the counsel for *Burr*, that he was instructed by *Burr* to defend the suit, and that the process was instituted, and possession claimed for an alleged forfeiture of *Wheeler's* lease by the appropriation of a part of the premises to uses denominated extra hazardous in contravention of the covenants in the lease from *Hill* to *Wheeler*. The counsel for the plaintiff objected to the admission of the process and the testimony of *Burr's* statements to his counsel, and they were excluded by the Judge. The *defendant* then read in evidence, the proceedings in a suit *Hasty & Huntress* v. *Wheeler*, and the judgment in their favor, for $478.

The trial was before EMERY J. and the report concludes in the following manner. For the purpose of reserving certain questions of law for the consideration of the full Court, by agreement of the parties, the jury were requested to answer the following inquiries. What was the value of the betterments of the premises made by *Isaac Wheeler?* They answer $101,60. What was the value of those made by *Huntress & Hasty?* The jury answered $487,68. Were the premises used by *Wheeler* or his assigns for purposes usually denominated extra hazardous as to fire by insurance companies? They answered, we could not find any. To the question, was there any entry made by *Hill* or *Smith* for the breach of the covenants for the non-payment of rent? the jury

Wheeler *v.* Hill.

answered, we have no proof of it. To the question, to what time the interest was calculated? the jury answered, we unanimously agreed to calculate it for four years and an half back of this time. There was much evidence introduced to the jury as to the nature, character, extent and value of the improvements. And the Court instructed the jury, that if from the evidence they were satisfied, that the expenditures by *Wheeler* and *Hasty & Huntress,* were such as men of prudence and good judgment would have made on the premises in contemplation of the use of the property as authorized by the lease, and that they did in fact add such an amount to the value of the building, supposing it should remain there, they might consider the damages recovered in that judgment *Hasty & Huntress* against the plaintiff as *prima facie* evidence of the amount of the betterments made by *Hasty & Huntress.* The verdict is taken however subject to the opinion of the whole Court, who may amend or set aside said verdict, or render judgment thereon as they may see fit.

*Rogers* and *M. L. Appleton,* for the defendant, argued, that the provisions in the lease extending to assigns related merely to the use of the building, as it was, and the rent to be paid for it, but the agreements in relation to the betterments were between the parties themselves, and did not extend to assigns; and the defendant therefore is not compellable to pay for improvements made by assigns. He has not so agreed, and on the agreement only can he recover. The alterations made by *Hasty & Huntress* were such as the plaintiff himself was not authorized to make. If the improvements were recoverable, the judgment was not *prima facie* the amount of betterments. 1 *Phil. Ev.* 248; 1 *Stark. Ev.* 186. Because it was between other parties, was the finding of another jury on other proof, and on evidence not given to the jury in this case. *Hasty* v. *Wheeler,* 3 *Fairf.* 434. There has been a forfeiture of the estate, and therefore the plaintiff cannot maintain his suit; because the building was used for purposes usually denominated extra hazardous as to fire in contravention of the agreement, and because the acts of *Hasty & Huntress* amounted to waste. *Jacob's Law Dic. Waste.* Where the landlord is entitled to enter for a forfeiture, it is not necessary to prove an actual entry. 1 *Saund.* 287, note 16.

*A. W. Paine* argued for the plaintiff, and contended: —

1. That the mere process of forcible entry and detainer, without a judgment rendered thereon, was not admissible in evidence. 1 *Stark. Ev.* 245, 280; 2 *Johns. R.* 46, 181; 7 *Johns. R.* 32.

2. The declarations of *Burr* were inadmissible, because mere hearsay; and because confidential communications of a client to his counsel; and because irrelative.

3. Judgment was rightly rendered for damages found for *Hasty & Huntress'* improvements. The lease is to assigns, but the letting of a part of them by *Wheeler,* was not an assignment, but a mere underletting. 6 *Cowen,* 302; 8 *Wend.* 175; *Swett* v. *Patrick,* 3 *Fairf.* 9.

4. The instructions were correct. They were substantially the same as was decided in *Hasty* v. *Wheeler,* 3 *Fairf.* 434. The defendant introduced the judgment in that case, and he has no right to complain that it was used for the only purpose it could be. But it was to be considered by the instruction, only *prima facie* evidence in case they found the value of the betterments to be equal to the amount recovered in that suit. That those improvements did not amount to waste, was decided in the case cited, *Hasty* v. *Wheeler.* The jury have found, that the building was not used for purposes considered extra hazardous as to fire, and that objection is not founded in fact.

The opinion of the Court was drawn up by

EMERY J. — We consider that the proposed declarations of *Burr* were rightly rejected. They could have been shown only by the *counsel* retained in his defence. And the law does not regard it as necessary for the protection of the client, that his communications should be made to his attorney under any particular circumstances or injunctions of secresy. It is sufficient that the relation of client and attorney subsisted between them to throw around the proceeding an impenetrable veil of secresy, excepting only if it should become necessary, *it might be communicated that Burr employed him.* Not a syllable more which he said on his case can lawfully be divulged. There would exist another objection against the admission of the evidence, that it would be hearsay. It would be entirely useless to introduce the process of forcible entry and detainer,

the justice of which was denied by pleading the general issue.
No judgment had been rendered thereon. Many groundless prose-
cutions are commenced. Whether this was of that description we
cannot undertake to say. Only we are satisfied it ought not to
have been admitted in this trial.

All the evidence in relation to the inquiry whether the building
had been used for purposes usually denominated extra hazardous
as to fire by insurance companies, was fully submitted to the jury,
and they could find no such use. We do not perceive that they
have drawn an incorrect conclusion. They have also negatived
the fact that *Hill* or *Smith* entered for the breach of the covenants
for non-payment of rent.

The defendant having offered the proceedings in the suit, *Hasty*
& *Huntress* against said *Wheeler* upon the lease between them,
must not be permitted to avail himself of objections against their
admissibility. If any truly existed, he must be deemed to have
waived them all. It would be absolutely indecorous to allow a
party to practice upon such a principle in a court of justice. He
must be bound by his own election to introduce the evidence.

This action is founded on the covenants of a lease by indenture,
made between the defendant and the plaintiff on the 10th of *Sept.*
1830, by which the defendant demised to the plaintiff, his heirs
and assigns, a building, lot of land, and wharf, in *Bangor*, to hold
for five years from the 1st of *Nov.* then next. And *Wheeler* cov-
enanted for himself, his heirs, executors and administrators to pay
rent, &c. And in like language the said parties covenanted to
each other. The word "assigns," is not again used. If *Hill*
sold the premises during the term, the lease was to expire after two
years from the date, "but in such case said *Hill* shall pay said
*Wheeler* for all betterments, which he shall have made on the pre-
mises."

Whenever a lessee conveys to a third person the whole or any
part of the land for a portion only of his term, such third person is
not an assignee of the term, but an under tenant. Even when
there have been covenants not to assign, transfer, set over, or oth-
erwise do or put away the lease or premises, courts have always
held a strict hand over these conditions for defeating leases. The
lessor, if he pleased, might certainly have provided against the

change of occupancy, as well as against assignment. *Crusoe ex dem Blencowe* v. *Bugbee*, 2 *Black. R.* 766; 3 *Wills.* 234. But he did not, and the parties by the lease having contemplated an assignable interest, we must regard the expenditures of the under tenant as though they had been made by *Wheeler* himself.

We are satisfied that the instruction to the jury was correct. And they having found that the expenditures by *Wheeler, Hasty & Huntress* were such as men of prudence and good judgment would have made on the premises, in contemplation of the use of the property as authorized by the lease, and that they did in fact add such an amount to the value of the building, supposing it should remain there, it would be quite inequitable, as well as unlawful, to allow the defendant to escape from responsibility to that extent. He has taken his indemnity in his contract with *Mr. Smith* of the 22d of *December*, 1832.

We consider that the sums of $101,60, and of $478, should constitute the principal. But on the authority of *Holliday* v. *Marshall*, 7 *Johns. R.* 211, we must deny interest, because the matter was all open at the trial to settle as unliquidated damages. Interest should not be calculated from the 26th day of *May*, 1833, to the time when the verdict was rendered. The verdict must therefore be amended, assuming $464 as a principal, and judgment must be on the verdict amended, with the addition of interest, as by law it should be.